# United States District Court

## DISTRICT OF ___MASSACHUSETTS___

In the Matter of the Seizure of
(Address or other description of property or premises to be seized)

All funds, up to the amount of $200,000,
on deposit in Sovereign Bank,
account number 30604949914,
held in the name of Ararat Realty

## APPLICATION AND AFFIDAVIT
## FOR SEIZURE WARRANT

CASE NUMBER: _O8m, CC25-L53_

I, _Special Agent Albert D. Lamoreaux_ being duly sworn depose and say:

I am a(n) _Special Agent of the Federal Bureau of Investigation_
Official Title

and have reason to believe that in the _____ DISTRICT of __Massachusetts__
there is now certain property which is subject to forfeiture to the United States, namely (describe property to be seized):

All funds, up to the amount of $200,000 on deposit in Sovereign Bank,
account number 30604949914, held in the name of Ararat Realty

which is (state one or more bases for seizure under the United States Code):

subject to seizure and forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C),
981(a)(1)(A), and 984, and 28 U.S.C. § 2461(c),

concerning a violation of Titles _18_ United States Code. Section(s) _1343 and 1957_ The facts to support a
finding of Probable Cause for issuance of a Seizure Warrant are as follows:

See the attached Affidavit

Continued on the attached sheet and made a part hereof. _X_ Yes _____ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

_February_ _4, 2008_         at   _Boston, Massachusetts_
Date                              City and State

Leo T. Sorokin
United States Magistrate Judge      _____
Name and Title of Judicial Officer      Signature of Judicial Officer

AO 109 (USAO-MA 9/2002) back

*08mj0019-08mj0025*

## AFFIDAVIT OF ALBERT D. LAMOREAUX

I, Albert D. Lamoreaux, being duly sworn, hereby depose and state as follows:

1.    I am a Special Agent of the Federal Bureau of Investigation (FBI), a position I have held for over twenty four years.  I am a Certified Public Accountant and have investigated many crimes involving Wire Fraud, 18 U.S.C. § 1343, Bank Fraud, 18 U.S.C. § 1344, and Money Laundering, 18 U.S.C. §§ 1956 and 1957.  I have led or participated in well over fifty investigations involving violations of these statutes that have relied to a significant extent on evidence in the form of bank, corporate, tax and other financial records.  I have utilized a variety of methods of proof in these investigations, including documentation of specific items involved in financial transactions, comprehensive analysis of patterns of bank deposits and withdrawals, and demonstration of the net worth and overall expenditures of individuals and corporations.

2.    Through my conversations with other agents and officers, and my analysis of reports prepared by other agents and documentary evidence, I am familiar with the financial aspects of the investigation of transactions out of the client trust account of attorney Raymond Desautels maintained at Hometown Bank, A Cooperative Bank, in Oxford, Massachusetts (Hometown Bank).  I submit this affidavit based upon my personal knowledge derived

from information that I have received from a variety of other

sources, including FBI Special Agent John Van Kleeff,

Massachusetts State Police (MSP) Troopers, a Detective from the

Worcester Police Department, and other law enforcement officers.

      3.    This Affidavit is made in support of applications for

seizure warrants for the following assets:

    a.    all funds, up to the amount of $1,640,000, on deposit in Sovereign Bank, account number 30604948775, held in the name of South Beach Realty LLC (the Sovereign South Beach Realty Account);

    b.    all funds, up to the amount of $330,000, on deposit in Bank of America, account number 004600642000, held in the name of Allen Seymour (the Bank of America Seymour Account);

    c.    all funds, up to the amount of $300,000, on deposit in Sovereign Bank, account number 30604948916 held in the name of Misty Arcouette (Arcouette);

    d.    all funds, up to the amount of $200,000, on deposit in Sovereign Bank, account number 30604949914, held in the name of Ararat Realty;

(collectively, the Bank Accounts)

    and

    e.    a Certified Check for $200,000, drawn on the Sovereign South Beach Realty Account, check number 129081019, payable to Arcouette;

    f.    a Certified Check for $100,000, drawn on the Sovereign South Beach Realty Account, check number 129081018, payable to Arcouette;

    g.    a Certified Check for $198,000, drawn on the Sovereign South Beach Realty Account, check number 129081014, payable to Jason Parsell (understood to refer to Jason Passell);

    h.    a Certified Check for $149,000, drawn on the Sovereign South Beach Realty Account, check number 129081020, payable to Steven Testa.

(together with the Bank Accounts, collectively, the Funds).

4.   As set forth in detail below, I respectfully submit that there is probable cause to believe that the Funds constitute or are derived from proceeds traceable to wire fraud in violation of 18 U.S.C. § 1343 and/or are funds involved in money laundering in violation of 18 U.S.C. § 1957.  Accordingly, there is probable cause to believe that the Funds are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), and 28 U.S.C. § 2461(c).

5.   This affidavit does not contain all of the information known to me and other law enforcement officers regarding this criminal investigation, but only those facts which are sufficient to establish probable cause for the issuance of the requested warrants.

**BACKGROUND**

6.   On February 1, 2008, the FBI was contacted by the MSP, who had received an allegation that Raymond Desautels (Desautels), an attorney in Oxford, Massachusetts, had misappropriated and disbursed approximately $1,990,000 of client funds (the Trust Moneys) from the Client Trust Account (the Desautels Client Trust Account) that he maintained at Hometown Bank.  Investigation on February 1 and 2, 2008, determined the following:

3

7.   Kevin Phelan (Phelan), of Hollywood, Ireland had been a business associate of William Bibaud (Bibaud), of Massachusetts, for more than twenty years.  Bibaud proposed that Phelan purchase a commercial real estate property in Pennsylvania (the Pennsylvania Realty), at a purchase price of approximately three million dollars.  Phelan agreed.

8.   Bibaud arranged for Desautels to act as closing attorney for the transaction.  Bibaud had been involved in seven real estate deals with Seymour in the past fourteen months in which Bibaud had used Desautels as the closing attorney.

9.   On or before January 24, 2008, Phelan wire transferred approximately $1,990,000 (i.e., the Trust Moneys) to an account held by Bibaud, at BayState Savings Bank.

10.   Bibaud obtained a certified check in the amount of $1,990,000, and on January 24, 2008, deposited the check (i.e., the Trust Moneys) into Desautels Client Trust Account, maintained at Hometown Bank.  Under Massachusetts rules governing attorneys licensed to practice in Massachusetts, attorneys are required to maintain client funds in trust, in bank accounts separate from their own property.  Supreme Judicial Court Rule 3:07, Massachusetts Rules of Professional Conduct 1.15.

11.   Bibaud told Desautels that the Trust Moneys were funds from Phelan for the purchase of the Pennsylvania Realty.

Nevertheless, a review of the Desautels Client Trust Account

revealed the following:

    a)    Check number 2514, dated January 25, 2008, in the amount of $200,000, was drawn on the Desautels Client Account, signed by Desautels as maker, to payee Armandale Properties; it was endorsed by Michael Rienecker on or about January 28, 2008 and was deposited at Domestic Bank, Cranston, RI.

    b)    Check number 2515, dated January 25, 2008, in the amount of $100,000, was drawn on the Desautels Client Trust Account, signed by Desautels as maker, to payee Jason Passell (Passell); it was endorsed by Passell on or about January 28, 2008 and deposited at Domestic Bank, Cranston, RI.

    c)    On January 28, 2008, Desautels wired transferred $1,640,000 to Sovereign Bank account number 30604948775 (i.e., the Sovereign South Beach Realty Account), held in the name of South Beach Realty LLC, an entity controlled by Steven Testa (Testa), of Auburn, Massachusetts.

12.  Desautels was interviewed regarding the above three

disbursements he made from the Desautels Client Trust Account.

He admitted that he knew the Trust Moneys were provided to him in

his capacity as the closing attorney for the Pennsylvania Realty.

He stated he made the three disbursements at the request of Allen

Seymour, an Oxford resident, who has previously been involved

with Bibaud in real estate deals in which Desautels was closing

attorney.  Desautels stated Seymour told him he (Seymour) needed

the funds for a short time to convince lenders that he and his

associates possessed adequate net worth to obtain bank financing.

5

Desautels acknowledged that he knew that neither Seymour,
Passell, Rienecker, Armandale Properties LLC, Testa, or South
Beach Realty LLC had any legal right to receive the Trust Moneys.
He stated that he gave the Trust Moneys to Seymour because "the
deal" was so close and he "had to make this score."

13.   Although Desautels knew that as of January 28, 2008, he
had disbursed $1,940,000 of the Trust Moneys as described in
paragraph 11, above, Desautels initially concealed this from
Phelan.  I interviewed Phelan by telephone on February 2, 2008,
and he told me that he had spoken by telephone with Desautels on
January 30, 2008 to ask why the Trust Moneys had not been wired
to Pennsylvania as required to close the purchase on the
Pennsylvania Realty.  Phelan stated that Desautels put him on
speakerphone for this conversation, and told him that Bibaud was
present.  Desautels then told Phelan that the Trust Moneys had in
fact been wired for the Pennsylvania Realty closing, but that it
might take an extra day to show up in the account because the
local bank did not usually do these types of transfers.

14.   Bibaud was interviewed by law enforcement officers in
connection with this investigation.  Bibaud stated that he had
done several real estate transactions with Seymour and that
Desautels had been the closing attorney in each of these
transactions.  Bibaud stated that neither Seymour nor Desautels

6

had any right to disburse the Trust Moneys to Seymour, Rienecker, Testa, or their entities, as none of them were involved in Phelan's purchase of the Pennsylvania Realty.

15.   Bibaud further stated that on February 1, 2008, he spoke by telephone with Seymour and that Seymour told him that Testa had taken a certified check out of Sovereign bank and had given the check to Rienecker.  Bibaud further stated that Seymour said that he knew Bibaud was talking to "the police."  Bibaud stated Seymour told him to stop (talking to the police) because Seymour had "files" on him.

16.   Subsequently, Bibaud contacted MSP Trooper Nick Nason on February 2, 2008, reporting that he had again spoken by telephone with Seymour earlier that day.  Bibaud stated that Seymour told him that Seymour has the money (i.e., the Trust Moneys), that he knows where it all is, and that he will return it on Monday (February 4, 2008), provided he receives immunity from prosecution.  Bibaud said that Seymour additionally offered to provide evidence against other individuals.[1]

17.   On February 1, 2008, law enforcement officers contacted Sovereign Bank regarding the Trust Moneys that had been wired to

_____

[1] According to Bibaud, Seymour named four persons whom he would provide evidence against, and Bibaud provided those names to law enforcement.

the Sovereign South Beach Realty Account, as described above in

paragraph 11.   Sovereign Bank determined that a total of

$1,637,000 of the Trust Moneys had been issued in certified

checks from the Sovereign South Beach Realty Account, as follows:

      a.    $200,000, payable to Misty Arcouette (Arcouette), a
resident of West Boylston, check number 129081019; this
check was deposited into Sovereign Bank Account
30604948916 (the Arcouette Sovereign Account);

      b.    $100,000, payable to Arcouette, check number 129081018;
this check was deposited into the Arcouette Sovereign
Account;[2]

      c.    $249,000, payable to Seymour/cash, check number
129081016;  Seymour deposited this check into an
account at Sovereign Bank and immediately wired
$150,000 to Bank of America account number
004600642000, in the name of Allen Seymour (i.e., the
Bank of America Seymour Account);

      d.    $200,000, payable to Stephen Tashjian (Tashjian), check
number 129081015;  Tashjian deposited this check into
the Sovereign Bank account number 30604949914; from
that account, he immediately wired $180,000 to the
Seymour Bank of America Account;[3]

      e.    $243,000, payable to Passell, check number 129081013;
this check was deposited at Domestic Bank, Cranston,
RI;

      f.    $298,000, payable to Testa, check number 129081017;
this check was deposited at Domestic Bank, Cranston,
RI;

      g.    $198,000, payable to Jason Parsell (understood based on

---

[2]Between the $200,000 check described in paragraph 17(a), and the
$100,000 described in paragraph 17(b), a total of $300,000 in
Trust Moneys was deposited into the Arcouette Sovereign Account.

[3]Between the $150,000 wire transfer described in paragraph 17(c),
and the $180,000 described in paragraph 17(d), a total of
$330,000 in Trust Moneys was deposited into the Seymour Bank of
America Account.

the investigation to refer to Jason Passell), check number 129081013;

h.    $149,000, check number 129081020 payable to Testa; (collectively, the Certified Checks).

18.    Based on the foregoing, there is probable cause to believe that the transfer of the Trust Moneys out of the Desautels Client Trust Account constituted wire fraud in violation of Title 18, United States Code, Section 1343. Further, the Trust Moneys, were transferred, as proceeds derived from wire fraud, in monetary transactions in a value greater than $10,000. There is therefore probable cause to believe that the persons involved in those transfers were engaged in money laundering, in violation of 18 U.S.C. § 1957.

## FORFEITABILITY OF THE FUNDS

19.    As set forth above, in paragraph 18 and passim, there is probable cause to believe that the Trust Moneys transferred into the Bank Accounts constitute or are derived from proceeds traceable to violations of 18 U.S.C. § 1343. Accordingly, there is probable cause to believe that the Bank Accounts, up to the amount of the Trust Moneys transferred into the Bank Accounts, are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 984, and 28 U.S.C. § 2461(c).

20.    There further is probable cause to believe that the

transfers of funds by certified check from the Bank Accounts were monetary transactions involving the proceeds of criminally derived property of a value greater than $10,000, derived from the proceeds of a specified unlawful activity, in violation of 18 U.S.C. § 1957(a).  Accordingly, the Bank Accounts up to the amount of the Trust Moneys deposited therein, constitute property involved in money laundering transactions in violation of 18 U.S.C. § 1957, or property traceable thereto, and are subject to seizure and forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and 28 U.S.C. § 2461(c).

21.  Finally, as demonstrated above, there is probable cause to believe that the Certified Checks constitute or are derived from proceeds traceable to violations of 18 U.S.C. § 1343. Accordingly, there is probable cause to believe that the Certified Checks are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 984, and 28 U.S.C. § 2461(c).  Finally, the Certified Checks were issued in monetary transactions involving the proceeds of criminally derived property of a value greater than $10,000, derived from the proceeds of a specified unlawful activity, in violation of 18 U.S.C. § 1957(a).  Accordingly, the Certified Checks constitute property involved in money laundering transactions in violation of 18 U.S.C. § 1957, or property

10

traceable thereto, and are subject to seizure and forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and 28 U.S.C. § 2461(c).

## CONCLUSION

22.  As set forth in detail above, I have probable cause to believe that the Funds constitute or are derived from proceeds traceable to wire fraud in violation of 18 U.S.C. § 1343, and/or property involved in money laundering transactions in violation of 18 U.S.C. § 1957.  Accordingly, there is probable cause to believe that the Funds, up to the amount of the Trust Moneys deposited therein, as described above, are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), and 28 U.S.C. § 2461(c).

Signed under the penalties of perjury this 4 th day of February 2008.

_____
Albert D. Lamoreaux
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this 4 th day of February 2008.

_____
LEO T. SOROKIN
United States Magistrate Judge

11